309 F.3d 1203
 Sue THOMAS, Plaintiff-Appellee,
v.
James J. NAKATANI, individually and in his capacity as Chairman of the Board of Agriculture, State of Hawaii; Department of Agriculture, State of Hawaii; State of Hawaii, Defendants-Appellants, and
United States of America, Defendant-Intervenor.
 No. 01-16310.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 2002.
 Filed November 6, 2002.
 
 Michael W. Kirk, Cooper & Kirk, Washington, D.C.; Deborah Day Emerson and David A. Webber, Deputy Attorneys General for Dept. of Attorney General, State of Hawai'i, for the defendants-appellants.
 Michael A. Lilly and John Winnicki, Ning Lilly & Jones, Honolulu, Hawaii, for the plaintiff-appellee.
 Jessica Dunsay Silver and Seth M. Galanter, Attorneys, Civil Rights Division of the Department of Justice, Washington, D.C., for the intervenor.
 Appeal from the United States District Court for the District of Hawaii; Alan C. Kay, District Judge, Presiding. D.C. No. CV-00-00125-ACK.
 Before: WALLACE, TASHIMA and TALLMAN, Circuit Judges.
 WALLACE, Senior Circuit Judge:
 
 
 1
 Hawaii appeals from the district court's denial of its motion to dismiss Thomas' Americans with Disabilities Act (ADA) claims on sovereign immunity grounds. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(a)(3) and (4). We have jurisdiction to determine whether or not we have jurisdiction. Matsuk v. INS, 247 F.3d 999, 1000-01 (9th Cir.2001). If we have jurisdiction to reach the merits of this appeal, it will be pursuant to the collateral order doctrine outlined in Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144-45, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).
 
 I.
 
 2
 The history of this case is more thoroughly described in Thomas v. Nakatani, 128 F.Supp.2d 684 (D.Haw.2000). By way of summary, Sue Thomas, the Appellee, is deaf and relies upon the assistance of her guide dog, Amazing Grace, to accomplish a number of important life activities. On April 26, 1999, she arrived in Hawaii, with Amazing Grace, to give a motivational speech.
 
 
 3
 At that time, Hawaii quarantined all dogs entering the state for 120 days to "prevent the introduction of rabies [into Hawaii]." Haw. Admin. R. § 4-29-9(a). Upon arrival, Thomas and Amazing Grace were accordingly escorted to the airport quarantine station where Amazing Grace was to be held for 120 days or until Thomas left Hawaii. After Thomas was initially told that Amazing Grace would have to stay at a quarantine station cottage or the airport quarantine station, she demanded to see the quarantine station branch managers, Doctors James F. Foppoli and Dewey Sturges. After some discussion, Doctors Foppoli and Sturges released Amazing Grace on a provisional quarantine to Thomas' hotel room. The provisional release required that Amazing Grace remain either in the hotel room or on certain areas of the hotel grounds to relieve herself. The release also required compliance checks that took place twelve times over Thomas' five-day stay.
 
 
 4
 Thomas gave her speech on May 1. Although the authorities initially declined to let her take Amazing Grace to the speech, they ultimately relented and allowed the dog to attend with an escort from the Department of Agriculture. When Thomas left Hawaii later that day, she was given a letter from James Nakatani, the Chairman of the Board of Hawaii's Department of Agriculture. The letter repudiated the provisional quarantine agreement that Thomas had entered into with Foppoli and Sturges as illegal and stated that the 120-day quarantine period applied to Amazing Grace as it would have applied to any other canine entering Hawaii. Thomas later received a notice from a Hawaii state court that levied a $525 fine on her for removing Amazing Grace from the airport quarantine station.
 
 
 5
 Thomas then filed a class action against Hawaii, its Department of Agriculture, and Nakatani in both his individual and official capacities (collectively, defendants). She claimed that defendants had violated the ADA, the Rehabilitation Act, 42 U.S.C. § 1983, and various state tort laws. Defendants moved to dismiss for failure to state a claim or for summary judgment. The district court denied defendants' motion with respect to Thomas' state-law claim against Nakatani in his individual capacity and stayed consideration of the motion with respect to Thomas' ADA claims against Hawaii, the Department of Agriculture, and Nakatani in both his individual capacity (but only with respect to prospective injunctive relief) and his official capacity. It further stayed consideration of the motion with respect to Thomas' section 1983 claims against Nakatani in both his official capacity (but only with respect to prospective injunctive relief) and his individual capacity but granted the motion with respect to Thomas' remaining claims. The district court stayed consideration of the motion with respect to the ADA and section 1983 claims because the Supreme Court, in Bd. of Trs. of Univ. of Alabama v. Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), was soon to decide whether Congress had validly abrogated state sovereign immunity when it enacted the ADA.
 
 
 6
 In Garrett, the Supreme Court concluded that "Congress [had] not validly abrogate[d] the State's sovereign immunity from suit by private individuals for money damages under Title I [of the ADA]," id. at 374 n. 9, 121 S.Ct. 955, but declined to reach the question of whether Congress had abrogated state immunity from suit under Title II of the ADA, id. at 360 n. 1, 121 S.Ct. 955. Since Thomas' ADA claims were brought under Title II, the district court reverted to our prior rulings that Congress had validly abrogated state sovereign immunity when it enacted Title II of the ADA. Dare v. California, 191 F.3d 1167, 1174 (9th Cir.1999), cert. denied, 531 U.S. 1190, 121 S.Ct. 1187, 149 L.Ed.2d 103 (2001); Clark v. California, 123 F.3d 1267, 1270 (9th Cir.1997), cert. denied, 524 U.S. 937, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998). Therefore, the district court denied Hawaii's motion to dismiss with respect to the stayed ADA claims. It also denied the motion with respect to the section 1983 claim for prospective injunctive relief against Nakatani in his official capacity but granted summary judgment on the section 1983 claim against Nakatani in his individual capacity on qualified immunity grounds.
 
 
 7
 Defendants appeal the district court's decision to follow our earlier ruling on the sovereign immunity question. After the briefs were filed in this appeal, Thomas also filed a Motion to Dismiss for Lack of Appellate Jurisdiction.
 
 II.
 
 8
 We first address the jurisdictional issue which can be raised at any time during the proceedings. United States v. Bennett, 147 F.3d 912, 914 (9th Cir.1998).
 
 
 9
 Title 28 U.S.C. § 1291 provides for appeal from "final decisions of the district courts." Appeal is thereby precluded "from any decision which is tentative, informal or incomplete," as well as from any "fully consummated decisions, where they are but steps towards final judgment in which they will merge." Cohen v. Beneficial Industrial Loan Corp., 337 U.S. [541], 546, 69 S.Ct. 1221, 93 L.Ed. 1528 [(1949)]. Nevertheless, a judgment that is not the complete and final judgment in a case will be immediately appealable if it
 
 
 10
 "fall[s] in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Ibid.
 
 
 11
 Metcalf & Eddy, Inc., 506 U.S. at 142-43, 113 S.Ct. 684.
 
 
 12
 This exception to the general rule precluding appellate jurisdiction over non-final orders, also known as the collateral order doctrine, applies to orders that "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3][are] effectively unreviewable on appeal from a final judgment." Id. at 144, 113 S.Ct. 684 (citation and quotation marks omitted).
 
 
 13
 In Metcalf & Eddy, the Supreme Court held that a federal court of appeals had jurisdiction under the collateral order doctrine to review a district court order denying a state or state entity's claim to "Eleventh Amendment immunity from suit in federal court." Id. at 141, 113 S.Ct. 684. It did so largely because allowing a suit to proceed against a state or state entity would undermine the very purpose for which the immunity was established: to protect states from being sued in federal court. Id. at 146, 113 S.Ct. 684.
 
 
 14
 Since this appeal is from a district court's denial of a state's claim to Eleventh Amendment immunity at the motion stage of litigation, one would think that it is clearly governed by Metcalf & Eddy. Undeterred, Thomas invokes our decision in Burns-Vidlak v. Chandler, 165 F.3d 1257 (9th Cir.1999), arguing that this appeal does not fall within the collateral order doctrine. In Chandler, Burns-Vidlak raised an ADA challenge to the categorical exclusion of blind and disabled persons from Hawaii's QUEST health care program. Id. at 1259. Burns-Vidlak originally filed suit against Chandler, the director of Hawaii's Department of Human Services. Id. After the district court concluded Burns-Vidlak was entitled to compensatory relief, it allowed him to add the State of Hawaii as a defendant and to seek punitive damages from both defendants. Id. Hawaii then brought a motion for partial summary judgment arguing that the Eleventh Amendment barred a Title II ADA punitive damages award even though it did not bar the Title II ADA claim. Id. When the district court denied its motion, Hawaii appealed. Id.
 
 
 15
 We held that the collateral order doctrine did not apply and that we therefore did not have subject matter jurisdiction. Id. at 1261. We did so because the district court's non-final order on the punitive damages issue was not "effectively unreviewable on appeal" as Hawaii would still be subject to suit, and therefore not immune, whether or not we heard the appeal. Id. The critical difference between the non-final order in Chandler, over which we did not have jurisdiction, and the non-final order in Metcalf & Eddy, over which a court of appeals would have jurisdiction, was that the action in Chandler would proceed against the state whether or not it prevailed on appeal since the state had invoked the Eleventh Amendment not to claim immunity from suit but "merely as a defense to liability for punitive damages..." 165 F.3d at 1260.
 
 
 16
 Thomas argues that this appeal is more like Chandler than it is like Metcalf & Eddy because, even though Hawaii asserts that it is completely immune from suit under the ADA, the survival of the section 1983 claim brought pursuant to Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), against Nakatani, which is in reality a claim against Hawaii, is tantamount to an admission on the part of Hawaii that it still can be sued and therefore it cannot satisfy the third criterion of the collateral order doctrine. In other words, since Hawaii will effectively still be subject to suit whether or not we hear this appeal (albeit indirectly through the Ex Parte Young claim against Nakatani), it is not completely immune from suit and therefore can obtain effective relief—the third criterion—following a final judgment in district court.
 
 
 17
 However, as the Supreme Court said in Metcalf & Eddy, the reason we will hear a state's appeal from a decision denying immunity to it under the Eleventh Amendment is that the benefit of the immunity is lost or severely eroded once the suit is allowed to proceed past the motion stage of the litigation. 506 U.S. at 146, 113 S.Ct. 684. If we declined to hear this appeal, Hawaii would have no answer from us on the question of whether it is immune from suit under Title II of the ADA and would therefore lose the benefit of its immunity if it is indeed immune. While the suit may still affect Hawaii indirectly through the surviving Ex Parte Young claim, this is no reason to deny Hawaii the immunity to which it is entitled under the Eleventh Amendment. If Hawaii were to prevail on appeal, it would no longer be a party to the suit. To us, this is sufficient to satisfy the third criterion of the collateral order doctrine.
 
 
 18
 Contrary to Thomas' suggestion, our holding in this regard is supported by our decision in Chandler. In Chandler, we concluded that the third collateral order criterion had not been satisfied because the state had conceded its right "not to be a litigant." Chandler, 165 F.3d at 1261. Hawaii has made no such concession here; all along it has maintained that it cannot be sued. While Thomas suggests that existence of the Ex Parte Young claim amounts to an admission by Hawaii that it still may be sued, the Supreme Court has suggested otherwise. True, the Ex Parte Young doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction. In Metcalf & Eddy, the Court stated that "[r]ather than defining the nature of Eleventh Amendment immunity, Young and its progeny render the Amendment wholly inapplicable to a certain class of suits. Such suits are deemed to be against officials and not the States or their agencies, which retain their immunity against all suits in federal court." 506 U.S. at 146, 113 S.Ct. 684. Our holding that the district court's denial of a motion to dismiss on Eleventh Amendment grounds is an appealable collateral order respects this clear line between Eleventh Amendment immunity and Ex Parte Young claims.
 
 
 19
 Further, we cannot accept Thomas' proposed broadening of the Burns-Vidlak limitation on the Metcalf & Eddy rule because such a broadening would, for all practical purposes, eliminate the rule. If all that was required to defeat appellate jurisdiction was the existence of an Ex Parte Young claim, all plaintiffs would assert such claims along with their direct claims against the state and we would rarely have jurisdiction to decide a state's appeal of a non-final order denying a state's claim to Eleventh Amendment immunity. This surely would be inconsistent with the respect we owe to the States "as members of the federation." Metcalf & Eddy, 506 U.S. at 146, 113 S.Ct. 684.
 
 
 20
 Finally, perhaps the strongest and simplest support for our conclusion is Metcalf & Eddy itself. While Metcalf & Eddy involved no Ex Parte Young claim, its procedural history is otherwise indistinguishable. It involved a district court's denial of a state's claim to sovereign immunity at the motion stage of litigation. From the language used in the Metcalf & Eddy decision, we discern no basis upon which to treat this case differently. The language used by the Supreme Court is to the point: "[w]e hold that States and state entities that claim to be `arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity." 506 U.S. at 147, 113 S.Ct. 684. Consistent with this language, we hold that the Supreme Court's conclusion in Metcalf & Eddy that a court of appeals has jurisdiction over a district court's non-final order denying a state's claim to Eleventh Amendment immunity under the collateral order doctrine applies whether or not an Ex Parte Young claim survives the motion stage of the litigation. We therefore have jurisdiction to hear this appeal.
 
 III.
 
 21
 Turning to the merits, Hawaii asks us to reconsider our earlier conclusion in Clark and Dare that Congress validly abrogated state sovereign immunity when it enacted Title II of the ADA in light of more recent Supreme Court decisions in Kimel v. Florida Bd. of Regents, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), and Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). We did so in Hason v. Medical Bd. of California, 279 F.3d 1167, 1171 (9th Cir.2002), where we reaffirmed our earlier rulings. The district court did not err when it denied defendants' motion with respect to Thomas' ADA claims.
 
 
 22
 AFFIRMED.