Howard MEREDITH, Plaintiff–Appellee,

v.

State of OREGON; Bruce A. Warner, Director of Oregon Department of Transportation; Jimmy L. Odom, Outdoor Advertising Technician, Defendants–Appellants.

No. 01–35869.

United States Court of Appeals, Ninth Circuit.

Submitted April 1, 2002.*

Filed Feb. 27, 2003.

* The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Janet A. Metcalf, Senior Assistant Attorney General, Salem, OR, for the defendants-appellants.

Russell L. Baldwin, Lincoln City, OR, for the plaintiff-appellee.

Before D.W. NELSON, THOMPSON and PAEZ, Circuit Judges.

## OPINION

PAEZ, Circuit Judge.

The posture of this case raises significant jurisdictional concerns. At issue is whether we may exercise our pendent appellate jurisdiction to review, on interlocutory appeal, the district court's denial of a motion to dismiss on the basis of *Younger* abstention in conjunction with reviewing the court's grant of a preliminary injunction. The State of Oregon ("State") urges us to exercise pendent appellate jurisdiction and to review the denial of its motion to dismiss. In contrast, Meredith contends that we lack jurisdiction to review the denial. We hold that, because resolution of the *Younger* abstention issue is "necessary to ensure meaningful review of" the grant of the preliminary injunction, we have pendent appellate jurisdiction to review this otherwise non-appealable order denying *Younger* abstention. We, however, affirm the district court's decision not to abstain under *Younger* and its grant of the preliminary injunction.

## BACKGROUND

Appellee Howard Meredith ("Meredith") owned a vacant parcel of property adjacent to scenic Highway 101 in Lincoln City,

Oregon. He erected a sign on his property, visible to travelers on Highway 101, that advertised "The Resort at Whale Pointe," an establishment located in Depoe Bay, Oregon, which is several miles away from Meredith's property. Meredith did not apply for or obtain a permit authorizing the erection and maintenance of his sign.

On May 19, 1999, Appellant State of Oregon [1] initiated, through a notice of violation letter, an enforcement action against Meredith, advising him that his sign violated the Oregon Motorist Information Act ("OMIA"), Or.Rev.Stat. §§ 377.700–377.840,[2] and that he had a right to correct the sign or to request an administrative hearing. The OMIA requires that individuals obtain an annual permit if they wish to erect or maintain an "outdoor advertising sign" [3] that is visible to the public from a state highway.

Meredith requested an administrative hearing, which was held on December 12, 2000. At the hearing, Meredith challenged the constitutionality of the OMIA under both federal and state law. The administrative law judge ("ALJ") issued a proposed order on February 22, 2001, dismissing Meredith's constitutional challenges as foreclosed by the Court of Appeals' decision in *Outdoor Media Dimensions, Inc. v. State of Oregon*, 150 Or.App. 106, 945 P.2d 614 (Or.Ct.App.1997), and requiring Meredith immediately to remove his sign from his vacant property or pay the State to remove the sign.

After the administrative hearing but before the ALJ's order became final, Meredith changed his sign to read "FOR RENT." On the basis of his changed sign, Meredith filed exceptions to the proposed order, requesting that the Oregon Department of Transportation ("ODOT") stay further enforcement proceedings and grant him a contested-case hearing to determine whether the new "FOR RENT" sign complied with the OMIA. The ODOT denied Meredith's request.

On March 8, 2001, still prior to the issuance of a final order, the Oregon Supreme Court held in *Outdoor Media Dimensions, Inc. v. State of Oregon*, 331 Or. 634, 20 P.3d 180, 190 (Or.2001), that an owner of a sign may change the sign's content to bring it into compliance with the OMIA. In light of this decision, Meredith changed the content of his sign to read:

ODOT IS IN VIOLATION OF PRESIDENT OF USA EXECUTIVE ORDER 12630 OF THE FIFTH AMENDMENT AND ORE. CONSTITUTION ARTICLE 1 SECTION 8 AND 20. OPINION OF H.E. MEREDITH.

He filed exceptions and argument to the ALJ's proposed order and again requested that the ODOT stay further enforcement of the OMIA until after he could establish the legality of the new sign. The ODOT denied Meredith's requests for a stay and a hearing to introduce evidence of his amended sign.

---

1. The individual appellants are Bruce A. Warner, Director of the Oregon Department of Transportation, and Jimmy L. Odom, an Outdoor Advertising Technician, who are employees of the State of Oregon.

2. Although the OMIA has been revised since the events here, our citations to the Act are as it existed before the amendments. In any event, the amendments do not affect our analysis.

3. An "outdoor advertising sign" is a sign that advertises: "(a) Goods, products or services which are not sold, manufactured or distributed on or from the premises on which the sign is located; or (b) Facilities not located on the premises on which the sign is located." Or.Rev.Stat. § 377.710(22).

On April 25, 2001, Meredith filed suit in district court. He sought a declaratory judgment that the OMIA violated the First Amendment and certain provisions of the Oregon constitution and a preliminary injunction enjoining the ODOT from further enforcing the statute.

The ALJ issued his final order on May 17, 2001, requiring Meredith or the State (at Meredith's expense) to remove his sign because it violated the OMIA. Due to the ODOT's denial of Meredith's request to present evidence of his amended sign, the ALJ was unable to consider the amended content, reasoning that "[a]ny evidence proposed to be submitted after the hearing is not properly in the record and may not be considered here." Meredith appealed the ALJ's ruling to the Oregon Court of Appeals on June 11, 2001, and the appeal is still pending. Meredith also requested on May 22, 2001, that the ODOT stay enforcement of the ALJ's final order until he had an opportunity to raise his federal claims in the Oregon Court of Appeals. The ODOT denied his request on June 27, 2001. On September 27, 2001, the Court of Appeals affirmed the ODOT's denial of the stay and also denied Meredith's separate motion for a stay.

In district court, the State filed both a motion to dismiss and an opposition to Meredith's motion for a preliminary injunction, arguing in both that the district court was required to abstain under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The district court denied the State's motion to dismiss because the court was not convinced that Meredith would have an adequate opportunity in state court to raise his federal constitutional claims regarding his amended sign. The court noted that the ALJ had refused to review the amended content of Meredith's sign, that Meredith's federal constitutional claims therefore were not before the Oregon Court of Appeals, and that the amendment was "critical" to a proper evaluation of Meredith's claims due to its political nature. The court granted a preliminary injunction in favor of Meredith, barring the State from removing the sign until the merits of the case were resolved.

The State appealed the denial of its motion to dismiss and the grant of the preliminary injunction. We issued an unpublished memorandum disposition dismissing the State's appeal for lack of appellate jurisdiction. The State then filed a Petition for Rehearing and Suggestion for Rehearing En Banc. We granted the Petition for Rehearing and denied the Petition for Rehearing En Banc as moot.

## STANDARD OF REVIEW

■ We review *de novo* the district court's decision not to abstain under *Younger. Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir.) (en banc), *cert. dismissed*, 533 U.S. 966, 122 S.Ct. 4, 150 L.Ed.2d 787 (2001); *Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 221 (9th Cir.1994).

## DISCUSSION

### I.

■ We have jurisdiction to review the district court's grant of a preliminary injunction. *See* 28 U.S.C. § 1292(a)(1) (establishing jurisdiction of courts of appeal over "[i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions"). At issue here is whether we also have jurisdiction to review the district court's order denying the State's motion to dismiss, which was based on *Younger* abstention. This order does not qualify as a final decision under 28 U.S.C. § 1291 or an interlocutory order as defined

in 28 U.S.C. § 1292, and it does not fit within the collateral order exception to § 1291.[4] We therefore focus on whether exercise of our pendent appellate jurisdiction is appropriate.

■ "Pendent appellate jurisdiction refers to the exercise of jurisdiction over issues that ordinarily may not be reviewed on interlocutory appeal, but may be reviewed on interlocutory appeal if raised in conjunction with other issues properly before the court." *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir.2000). In *Swint v. Chambers County Commission*, the Supreme Court declined to settle definitively "whether or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable." 514 U.S. 35, 50–51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). The Court made clear, however, that appellate courts should exercise restraint in reviewing on interlocutory appeal otherwise non-appeal-able orders because "a rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay *Cohen*-type collateral orders into multi-issue interlocutory appeal tickets. . . ." *Id.* at 49–50, 115 S.Ct. 1203 (citing *Abney v. United States*, 431 U.S. 651, 663, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)); *see also Switzerland Cheese Ass'n v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 24, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966) (cautioning that § 1292(a)(1)'s jurisdiction over interlocutory appeals should be applied "somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders"). Despite its reluctance to "expan[d][ ] the scope of an interlocutory appeal," *Swint*, 514 U.S. at 50, 115 S.Ct. 1203, the Court suggested that, under our pendent appellate jurisdiction, appellate courts may review rulings that are "inextricably intertwined" with or "necessary to ensure meaningful review of" decisions over which we have jurisdiction.[5] *Id.* at 51, 115 S.Ct. 1203. Since

4. Under the collateral order doctrine, we may review a "small class" of pre-judgment orders that provide a final determination of "claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We can review a district court's ruling under the collateral order doctrine if it is (1) conclusive, (2) resolves important questions separate from the merits, and (3) is effectively unreviewable on appeal from the final judgment in the underlying action. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (citing *Cohen*, 337 U.S. at 546, 69 S.Ct. 1221). We held in *Confederated Salish v. Simonich*, 29 F.3d 1398, 1402–03 (9th Cir.1994), that a district court's refusal to abstain under *Younger* satisfies the first and second prongs because it is conclusive and resolves an important question separate from the merits of the appeal, but that it fails the third prong of the collateral order doctrine because it *can* be reviewed effectively on appeal from a final judgment. *Id.* at 1403 ("On appeal from a final judgment, a court of appeals can review a district court's refusal to abstain under *Younger*, without implicating the mootness doctrine, even though the district court has decided the merits of the case and all state proceedings have been completed."). The district court's refusal to abstain under *Younger* therefore is not part of the "small class" of orders that fit within the collateral order exception to § 1291.

5. *Swint* did not address pendent appellate jurisdiction in the context of interlocutory review under § 1292(a)(1), but we have applied the *Swint* framework in this context. *See LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 986–87 (9th Cir.2001) (appeal of a permanent injunction and a partial summary judgment order), *cert. denied*, 536 U.S. 959, 122 S.Ct. 2663, 153 L.Ed.2d 837 (2002); *Dare v. California*, 191 F.3d 1167, 1170 (9th Cir.1999) (same); *Paige v. California*, 102 F.3d 1035, 1039–40 (9th Cir.1996) (appeal of an interim injunction as

*Swint,* we and our sister circuits have examined whether an otherwise non-appealable ruling is "inextricably intertwined" with or "necessary to ensure meaningful review of" the order properly before us on interlocutory appeal in determining whether to exercise our pendent appellate jurisdiction. *See, e.g., Timpanogos Tribe v. Conway,* 286 F.3d 1195, 1200 (10th Cir. 2002); *Antrican v. Odom,* 290 F.3d 178, 191 (4th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 467, 154 L.Ed.2d 329 (2002); *Cunningham,* 229 F.3d at 1284; *Merritt v. Shuttle, Inc.,* 187 F.3d 263, 268–69 (2d Cir.1999); *Paige v. California,* 102 F.3d 1035, 1039–40 (9th Cir.1996).

We have not addressed, however, whether, in light of *Swint,* we can review a district court's decision regarding *Younger* abstention as part of our pendent appellate jurisdiction. Before *Swint,* we had held that our jurisdiction under § 1292(a)(1) extended to "matters inextricably bound up with the injunctive order from which appeal is taken." *Self–Realization Fellowship Church v. Ananda Church of Self–Realization,* 59 F.3d 902, 905 (9th Cir. 1995) (citing *TransWorld Airlines v. Am. Coupon Exch.,* 913 F.2d 676, 680 (9th Cir. 1990)); *see also Bernard v. Air Line Pilots Ass'n,* 873 F.2d 213, 215 (9th Cir.1989). We also had applied much broader standards in exercising pendent jurisdiction over non-appealable rulings. *See, e.g., Fentron Indus., Inc. v. Nat'l Shopmen Pension Fund,* 674 F.2d 1300, 1304 (9th Cir.1982) (holding that § 1292(a)(1) "extends jurisdiction not only to the injunction itself, but to all the issues that underlie the

order"). In *Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 468–70 (9th Cir.1984), we considered (as the State requests that we do here) whether it was proper for the district court not to abstain under *Younger* at the same time that we reviewed the district court's grant of a preliminary injunction. The reasoning in *Goldie's Bookstore,* however, rested on standards for pendent appellate jurisdiction articulated in pre-*Swint* cases. Because the court did not discuss the basis for its jurisdiction to review the *Younger* ruling, it is unclear whether *Goldie's Bookstore* remains controlling authority in light of *Swint. See* Nelson, Goelz & Watts, *Federal Ninth Circuit Civil Appellate Practice* § 7:54 (The Rutter Group 2001) ("Cases decided before the Supreme Court limited the scope of pendent appellate jurisdiction should be relied upon with circumspection."). Similarly, in *Gregorio T. v. Wilson,* 59 F.3d 1002, 1004–05 (9th Cir. 1995), we reviewed the district court's decision not to abstain under *Younger* in conjunction with our review of the court's grant of a preliminary injunction, but we did not discuss either the basis for our jurisdiction over the *Younger* issue or the impact of *Swint* on our pendent appellate jurisdiction.[6] It therefore is necessary for us to consider what basis we have for jurisdiction over the *Younger* issue in light of *Swint.*

A. Inextricably Intertwined

We have narrowly construed *Swint's* "inextricably intertwined" prong. *See Cunningham,* 229 F.3d at 1284 ("We have

---

well as a class certification order and a partial summary judgment order in favor of the plaintiffs).

**6.** *See also Diamond "D" Constr. Corp. v. McGowan,* 282 F.3d 191, 197–202 (2d Cir. 2002) (considering applicability of *Younger* abstention as part of review of district court's

grant of a preliminary injunction without a discussion of the basis for its jurisdiction); *Armco, Inc. v. United Steelworkers,* 280 F.3d 669, 681–83 (6th Cir.2002) (deciding *Younger* abstention issue as part of review of a consent decree but failing to discuss its jurisdiction to do so).

consistently interpreted 'inextricably intertwined' very narrowly."); *California v. Campbell*, 138 F.3d 772, 778 (9th Cir.1998) ("Given the Supreme Court's criticism of pendent appellate jurisdiction, the Court's 'inextricably intertwined' exception should be narrowly construed."). "Two issues are not 'inextricably intertwined' if we must apply different legal standards to each issue." *Cunningham*, 229 F.3d at 1285. "Rather, the legal theories on which the issues advance must either (a) be so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or (b) resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Id.* (internal citations omitted).

For example, in *California v. Campbell*, the defendants appealed the district court's grant of a permanent injunction requiring them to clean up contaminated water due to their violations of state nuisance and environmental laws. 138 F.3d at 775. We had jurisdiction under § 1292(a)(1) to review the grant of the injunction. *Id.* At issue was whether we also had pendent appellate jurisdiction to consider the defendants' appeal of the summary adjudication orders finding them liable under state environmental and nuisance law as well as under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *Id.* We held that it was proper to exercise pendent appellate jurisdiction over the summary adjudication order finding the defendants liable under state law because "the interlocutory order finding the defendants liable under state law ... [was] part of[the] order granting an injunction" and thus was "inextricably intertwined" with it. *Id.* at 777–78. The summary adjudication ruling provided the "legal authority" for granting injunctive relief and dictated the nature and scope of the relief to be granted. *See also Paige*, 102 F.3d at 1040 ("Review of the [partial summary judgment] order is a necessary predicate to review of the injunction because the relief provided in the injunction was based on the fact that the merits of the disparate impact issue had been resolved.").

Similarly, because certification of a class action provides the basis for granting relief on a class-wide basis, an injunction granting class-wide relief cannot be affirmed without also upholding the class certification order. *See Immigrant Assistance Project of the Los Angeles County Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir.2002) (holding that where an injunction provided relief to certain class members, we had pendent jurisdiction to review the certification of the class as to those members because the district court had to certify the class before granting the class members injunctive relief); *Paige*, 102 F.3d at 1039 ("Because the injunction issued here provides class-wide relief, we could not uphold it without also upholding the certification of the class.").[7]

7. We also have concluded, outside the injunction context, that two rulings—one appealable on interlocutory appeal and the other nonappealable—were "inextricably intertwined." *See Streit v. County of Los Angeles*, 236 F.3d 552, 559 (9th Cir.) (exercising pendent appellate jurisdiction over the district court's orders denying motions to dismiss and a motion for summary judgment because they "raise the same issues, use the same legal reasoning, and reach the same conclusions" as the orders over which the court had jurisdiction under 28 U.S.C. § 1292(b)), *cert. denied*, 534 U.S. 823, 122 S.Ct. 59, 151 L.Ed.2d 27 (2001); *Huskey v. City of San Jose*, 204 F.3d 893, 905 (9th Cir.2000) (holding that the denial of the individual defendants' motions for summary judgment on the basis of qualified immunity was "inextricably intertwined" with the denial of the City's motion for summary judgment on the basis of § 1983 liability because the court's conclusion as part of its

■ Unlike summary adjudication and class certification orders, a district court's decision whether to abstain under *Younger* is *not* "inextricably intertwined" with its subsequent grant of a preliminary injunction. A district court's determinations of whether it must abstain under *Younger* and whether to grant a preliminary injunction require the application of separate and distinct legal standards.[8] It is not necessary to decide whether the district court should have abstained under *Younger* in order to review whether it applied the appropriate legal standard and analysis in granting a preliminary injunction. *See Immigrant Assistance Project,* 306 F.3d at 870 (declining to review the order certifying class members who did not benefit from the injunction because the court could "uphold the injunction without reaching the question whether the class certification in the 1995 Order was proper" as to these class members); *Cunningham,* 229 F.3d at 1286 (finding that the denial of the City's motion for summary judgment was *not* inextricably intertwined with the denial of the individual defendants' motions for qualified immunity because "[w]hether the City's policy, customs, or usage caused plaintiffs' injuries is a separate inquiry from whether the non-supervisory officers are entitled to qualified immunity"); *Campbell,* 138 F.3d at 777–78 (holding that where "the injunction that the court issued concerned the defendants' liability under state nuisance and environmental laws, not their liability under CERCLA," the court lacked pendent ap-pellate jurisdiction to review the interlocutory order finding the defendants liable under CERCLA because it was "not part of the order granting the injunction"). Moreover, our review of whether the district court properly granted a preliminary injunction does not "necessarily resolve" the *Younger* abstention issue.

Although it arguably serves the interests of judicial economy to review the *Younger* abstention issue first, the Supreme Court has made it clear that flexible interpretations of our appellate jurisdiction on the basis of concerns about judicial economy "drift away from the statutory instructions Congress has given to control the timing of appellate proceedings." *Swint,* 514 U.S. at 45, 115 S.Ct. 1203. The denial of a motion to dismiss on the basis of *Younger* abstention therefore is not reviewable as a pendent order under *Swint's* "inextricably intertwined" prong.

## B. Necessary for Meaningful Review

Although the district court's decision not to abstain under *Younger* is not "inextricably intertwined" with its order granting the preliminary injunction, we may still have jurisdiction over the order denying the State's motion to dismiss under *Younger* if review of this order is "necessary to ensure meaningful review of" the preliminary injunction. We conclude that it is.

We have held that we have jurisdiction to review, on interlocutory appeal, a denial of a motion to dismiss on the basis of

qualified immunity analysis that the plaintiff failed to allege a constitutional deprivation *"necessarily* resolve[d]" the City's § 1983 liability) (citation omitted).

8. To obtain a preliminary injunction, a moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised, and the balance of hardships tips sharply in favor of the mov-ing party. *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001). *Younger* abstention is required. if (1) state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions. *Fresh Int'l Corp. v. Agricultural Labor Relations Bd.,* 805 F.2d 1353, 1357–58 (9th Cir.1986).

sovereign immunity. *See Thomas v. Nakatani,* 309 F.3d 1203, 1207–08 (9th Cir. 2002); *In re Republic of the Philippines,* 309 F.3d 1143, 1148 (9th Cir.2002). We review the immunity issue on interlocutory appeal because "the benefit of the immunity is lost or severely eroded once the suit is allowed to proceed past the motion stage of the litigation." *Thomas,* 309 F.3d at 1207–08.

Similarly, the Second Circuit has held that it can review, on interlocutory appeal, the basis for the district court's subject matter jurisdiction over a *Bivens* claim because it is " 'necessary to ensure meaningful review of' the district court's order denying qualified immunity on that claim." *Merritt,* 187 F.3d at 269; *see also Timpanogos Tribe,* 286 F.3d at 1201 (same). The court reasoned that "[t]he existence of subject matter jurisdiction goes to the very power of the district court to issue the rulings [then] under consideration." *Merritt,* 187 F.3d at 269 (citation omitted); *see also Lovell v. Chandler,* 303 F.3d 1039, 1048–49 (9th Cir.2002) (holding that review of a partial summary judgment order regarding general liability for compensatory damages that was granted in an underlying class action suit was "necessary to ensure meaningful review of" compensatory damages awards granted to two of the class members in suits brought by them individually), *cert. denied,* —— U.S. ——, 123 S.Ct. 871, 154 L.Ed.2d 775 (2003).

Resolution of subject matter jurisdiction and of qualified immunity is "necessary to ensure meaningful review of" the district court's interlocutory rulings because if appellate courts lack jurisdiction, they cannot review the merits of these properly appealed rulings. In contrast, in cases in which *Younger* applies, the federal courts *have* jurisdiction over the parties' claims; *Younger* abstention concerns whether they should exercise that jurisdiction. *See*

*Woodfeathers, Inc. v. Washington County,* 180 F.3d 1017, 1020 (9th Cir.1999) (" '*Younger* is an exception to the usual rule that federal courts should exercise the jurisdiction conferred on them by statute.' " (quoting *Gartrell Constr. Inc. v. Aubry,* 940 F.2d 437, 441 (9th Cir.1991))).

Like subject matter jurisdiction and qualified immunity, however, resolution of the *Younger* abstention issue is critical because, if the district court is required to abstain under *Younger* and dismiss the suit, then it has no authority to rule on a party's motion for a preliminary injunction. It therefore is necessary to review a district court's decision to abstain under *Younger* on interlocutory appeal "to ensure meaningful review of" the court's grant of a preliminary injunction.

We therefore hold that in cases such as this, in which a district court denies a motion to dismiss on the basis of *Younger* abstention and then grants injunctive relief that potentially interferes with ongoing state proceedings, review of the court's *Younger* abstention decision is "necessary to ensure meaningful review of" the grant of the preliminary injunction.

## II.

Having concluded that we may exercise pendent appellate jurisdiction over the district court's denial of the State's motion to dismiss on the basis of *Younger* abstention, we now reach the issue of whether the court's decision not to abstain was proper.

A district court should abstain under *Younger* when: (1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) the state proceedings provide the plaintiff with an adequate opportunity to raise federal claims. *Green,* 255 F.3d at 1091, 1095 (acknowledging adoption of the test

set forth in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). *Younger* abstention is proper only when "the federal relief sought would interfere in some manner in the state court litigation." *Id.* at 1094.

"[A]s a general matter, 'the federal courts' obligation to adjudicate claims within their jurisdiction [is] "virtually unflagging." ' " *Id.* at 1089 (citations omitted; alteration in original). Indeed, we have held that "there are limited circumstances in which such abstention by federal courts is appropriate, those circumstances are carefully defined and remain the exception, not the rule." *Id.* (internal quotation marks and citations omitted). The *Younger* abstention doctrine reflects a strong federal policy against federal interference with ongoing state proceedings.[9] *Id.* at 1094–95 (noting that *Younger* "reiterated a 'longstanding public policy against federal court interference with state court proceedings' " (citing *Younger,* 401 U.S. at 43, 91 S.Ct. 746)); *see also Communications Telesystems Int'l v. Cal. Public Utility Comm'n,* 196 F.3d 1011, 1015 (9th Cir. 1999) ("The interests of comity, federalism, economy, and the presumption that state courts are competent to decide issues of federal constitutional law underlie *Younger* abstention.").

With these policy considerations in mind, we address each of the *Younger* prongs in turn.

A. Ongoing State Judicial Proceedings

 The district court concluded that this prong was not satisfied because, although the State initiated the state administrative proceedings before any federal proceedings began, the state proceedings were not "of substance on the merits" because they did not address the new political content on Meredith's sign. *See Fresh Int'l Corp. v. Agric. Labor Relations Bd.,* 805 F.2d 1353, 1358 (9th Cir.1986) ("Abstention is required only when the state proceedings have been initiated 'before any proceedings of substance on the merits have taken place in federal court.' " (citing *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975))). The State contends that the district court erred in concluding that there were no ongoing state proceedings because Meredith appealed the ALJ's final order to the Oregon Court of Appeals.[10] We agree that the state proceedings are ongoing.

The OMIA provides the owner of a sign with three options if he or she receives notice that the sign does not comply with the statute. *See* Or.Rev.Stat. § 377.775(3)(a). The owner may make the sign comply with the OMIA, remove it, or request a hearing before the Director of Transportation. *Id.* Meredith chose to pursue an administrative hearing. Before the ALJ issued a final order, however, Meredith filed a complaint in district court. At the time of the filing in federal court, there therefore were ongoing state proceedings. *See Canatella v. California,* 304 F.3d 843, 850 (9th Cir.2002) ("We consider whether the state court proceedings were ongoing as of the time the federal action was filed." (citation omitted)); *Dubinka,* 23 F.3d at 223 ("The Supreme Court has held that *Younger* abstention applies to prevent federal intervention in a state judicial proceeding in which a losing litigant has not

---

9. Although *Younger* involved pending state criminal proceedings, *Younger* abstention has been expanded to apply to pending state administrative proceedings. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs.,* *Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

10. We take judicial notice of Meredith's filing in the Oregon Court of Appeals.

exhausted his state appellate remedies." (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607–11, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975))). Moreover, Meredith filed a petition for review with the Oregon Court of Appeals after receiving the final order, so he continues to avail himself of *state* judicial remedies.

## B. Important State Interests

The district court concluded that the State's interests, as reflected in the OMIA, were sufficient to satisfy this prong of the *Younger* abstention test. The policies behind the OMIA are:

[t]o promote the public safety; to preserve the recreational value of public travel on the state's highways; to preserve the natural beauty and aesthetic features of such highways and adjacent areas; [and] to provide information about and direct travelers to public accommodations, commercial services for the traveling public, campgrounds, parks, recreational areas, and points of scenic, historic, cultural and educational interest. . . .

Or.Rev.Stat. § 377.705. Neither the State nor Meredith disputes the district court's conclusion that these are legitimate state interests, and we agree. *See Mackey v. Montrym*, 443 U.S. 1, 17, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (noting legitimate state interest in highway safety).

## C. Adequate Opportunity to Raise Federal Claims

We conclude that the State established the first two *Younger* prongs. We agree with the district court, however, that given the "unique posture of this case," Meredith did not have an adequate opportunity to raise his federal constitutional claims in a state forum.

To invoke *Younger* abstention, Meredith "need be accorded only an *opportunity* to fairly pursue [his ] constitutional claims in the ongoing state proceedings." *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (emphasis added); *see also Communications Telesystems*, 196 F.3d at 1019 ("The third prong of the *Younger* analysis asks whether the plaintiff has or had an 'adequate' or 'full and fair' opportunity to raise[his] federal claims in the state proceedings." (citing *Moore v. Sims*, 442 U.S. 415, 431 n. 12, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979))); *Dubinka*, 23 F.3d at 224 (same). "*Younger* requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings." *Communications Telesystems*, 196 F.3d at 1020; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (holding that federal plaintiff must show " 'that state procedural law barred presentation of [his] claims' " (quoting *Moore v. Sims*, 442 U.S. at 432, 99 S.Ct. 2371)); *Dubinka*, 23 F.3d at 224 (same). "[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15, 107 S.Ct. 1519; *see also Woodfeathers, Inc.*, 180 F.3d at 1020. *Younger* abstention "presupposes the opportunity to raise *and have timely decided* by a competent state tribunal the federal issues involved." *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (emphasis added).

The State contends that under Oregon law, Meredith had an adequate opportunity to litigate his federal constitutional claims in state court because he could raise on appeal the issue of whether the ALJ erred in refusing to consider the new content on his sign. Oregon law provides Meredith with several options for challenging the ALJ's final order and for presenting his federal constitutional claims in state court. None of these options, howev-

er, provided him with "timely" adjudication of his federal claims. We therefore conclude that Meredith did not have an adequate opportunity to present his federal constitutional claims in state court and that this prong of the *Younger* abstention doctrine was not satisfied.

Meredith did not have an opportunity to present his federal constitutional claims, which stemmed from his amended sign, *before* the ALJ issued his final order. *Cf. Kenneally v. Lungren,* 967 F.2d 329, 332–33 (9th Cir.1992) (holding that the third *Younger* prong was satisfied because the appellant had a "meaningful opportunity [ ] to present his constitutional claims for independent judicial review *prior to* the Board's decision becoming effective") (emphasis added).

He twice filed exceptions to the ALJ's proposed order pursuant to Oregon Administrative Rule 137–003–0650(1), but because the ODOT rejected his requests to present evidence of his amended sign and to raise his federal constitutional claims, the ALJ could not consider these claims. *See* Or. Admin. R. 137–003–0650(3) ("The hearing officer shall not consider new or additional evidence unless … the *agency* requests the hearing officer to conduct further hearing.") (emphasis added); Or. Admin. R. 137–003–0655(1) ("After issuance of the proposed order, if any, the hearing officer shall not hold any further hearing or revise or amend the proposed order *except at the request of the agency.*") (emphasis added). In fact, the ALJ made clear in his final order that "[a]ny evidence proposed to be submitted after the hearing [was] not properly in the record and [could ] not be considered."

Meredith also did not have a "full and fair" opportunity to present his federal claims *after* the ALJ issued the final order because he could not obtain a stay of enforcement of the final order within thirty days before he was required to take down his sign. The ALJ issued his final order on May 17, 2001. The order required Meredith to remove his sign (the amended sign) immediately, or else to pay for the State to remove the sign thirty days after the order issued. The terms of the order therefore gave Meredith up to thirty days, until approximately June 16, 2001, to challenge the ALJ's final decision. On May 22, 2001, Meredith requested a stay of the ALJ's final order so that he could raise his federal claims in the Oregon Court of Appeals. *See* Or. Admin. R. 137–003–0690(1) ("[A]ny person who … petitions for … judicial review may request the agency to stay the enforcement of the agency order that is the subject of the petition.").[11] Under Oregon law, however, the ODOT had thirty days to respond to Meredith's request for a stay, *see* Or. Admin. R. 137–003–0700(2), so it did not deny Meredith's request until June 27, 2001, after the date by which he was required to remove his sign. Here, the State's thirty-day response period acted as a procedural bar to Meredith's obtaining state adjudication of the merits of his federal claims.

Nor could Meredith receive a timely stay directly from the Oregon Court of Appeals. Under Oregon Revised Statute section 183.482(3)(a), the "agency" may grant a stay of the ALJ's final order, and only *"[a]gency denial of a motion for stay*

---

11. Oregon law permits a party to file a petition for reconsideration or rehearing of a final order. *See* Or. Admin. R. 137–003–0675. A petition for reconsideration or rehearing need not be filed, however, as a condition for judicial review of a final order. *See*

Or.Rev.Stat. § 183.480(1). Meredith did not file a petition for reconsideration or rehearing, so we do not address this remedy here. We also note that this avenue of relief does not affect our analysis.

is subject to review by the Court of Appeals...." *See* Or.Rev.Stat. § 183.482(3)(d) (emphasis added); *see also* Or. R.App. P. 4.30 ("A party may move for review of an agency's denial of a motion to stay."). The ODOT did not deny Meredith's request for a stay until June 27, 2001. Meredith therefore could not pursue review of this denial in the Court of Appeals until after he already was required to remove his sign. *See Bergerson v. Salem–Keizer Sch. Dist.*, 185 Or.App. 649, 60 P.3d 1126, 1131 (Or.Ct.App.2003) (noting that section 183.482(3) does not provide for "a period during which the underlying agency decision is nonenforceable while the issue of whether a stay should be granted is determined").

Meredith filed a petition for review with the Oregon Court of Appeals on June 8, 2001, which might have provided him with the opportunity to present his federal constitutional claims in state court. *See Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 713 (9th Cir.1995) (noting that appellants could raise their federal claims in a petition for review); *see also* Or.Rev. Stat. § 183.482(8)(b)(C) (stating that the Oregon Court of Appeals has jurisdiction to consider constitutional claims). Under Oregon law, however, filing a petition with the Court of Appeals does not automatically stay enforcement of the ALJ's order. *See* Or.Rev.Stat. § 183.482(3)(a). As noted, Meredith therefore moved for a stay, which the Court of Appeals denied.

In sum, we hold that Meredith never had the opportunity, before he was required by law to remove his sign, to have a state court consider the merits of his federal constitutional claims. Due to the unique posture of this case, it therefore was appropriate for the district court not to abstain from hearing Meredith's case.[12]

## CONCLUSION

We have jurisdiction to review the district court's denial of the State's motion to dismiss on the basis of *Younger* abstention, and we affirm. Because the State does not contend that the district court abused its discretion or challenge the injunction except on *Younger* abstention grounds, we also affirm the district court's grant of the preliminary injunction.

AFFIRMED.

---

**12.** Because we conclude that this prong of the *Younger* abstention doctrine was not satisfied, we need not reach the issue of whether "the federal relief sought would interfere in some manner in the state court litigation." *Green*, 255 F.3d at 1094.