MILLER, Chief Justice,
dissenting.
I respectfully dissent.
I would hold that this court should adopt the federal collateral order doctrine as an acceptable interpretation of our “final order” rule, Tribal Code § 310(h)(2), and that we have jurisdiction to hear interlocutory appeals in the appropriate settings. I would then accept jurisdiction over this interlocutory appeal by Spirit Mountain Gaming, Inc. (defendant), because I feel that the appeal meets the “collateral order” test set out in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 341, 69 S.Ct. 1221, 93 L.Ed. 1528(1949). I would so hold even though plaintiff will be allowed to continue her suit notwithstanding any decision we might make in this interlocutory appeal.
I would also reach the issues raised in defendant’s appeal and reverse the trial court’s March 24, 2004 order that the Tribe waived its sovereign immunity under the gaming compact to suits by individuals in plaintiffs situation. Furthermore, I would hold that plaintiff cannot require defendant to litigate a claim of non-economic damages greater than the $100,000 amount to which the Tribal Council expressly waived tribal sovereign immunity in the Tribal Torts Claims Ordinance (TTCO).
I recognize that there is a fine line here because even in my view plaintiff would be able to continue her lawsuit under the TTOC for non-economie damages up to $100,000. But I believe that proper respect for tribal governance, protection of tribal resources, and the boundaries of sovereign immunity all demand that plaintiff be limited to the exact terms of the sovereign immunity waiver as defined by the tribal legislature.
I.
It is instructive to note some of the parameters of sovereign immunity as applied to federal, tribal, and state governments, and specifically in regard to interlocutory appeals of immunity claims.
The idea behind sovereign immunity is that a government cannot be sued without its consent. “[The King] can not be compelled to answer in his own court.... ” Nevada v. Hall, 440 U.S. 410, 415 n. 6, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979) (quoting 1 F. Pollock & F. Maitland, History of English Law 518 (2d ed.1909)). Sovereign immunity protects the public treasury, financial integrity, autonomy, decision making ability, and the sovereign capacity of governments. Alden v. Maine, 527 U.S. 706, 750-51, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (citing cases).
The United States government, for example, cannot be sued without its express consent and then only according to the explicit terms of that consent. F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (citing cases). The United States Supreme Court has also repeatedly declared that there is a presumption favoring tribal sovereign immunity. “Suits against Indian tribes are ... barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation.” Oklahoma Tax Commit v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). There is also a strong presumption against waiver of tribal sovereign immunity. Pan Am. Co, v. Sycuan Band of Mission Indians, 884 F.2d 416, 419 (9th Cir. 1989). “It is well settled ‘that Indian tribes possess the same common-law immunity from suit traditionally enjoyed by sovereign powers.’ ” Missouri River Services, Inc. v. Omaha Tribe of Nebraska, 267 F.3d 848, 852 (8th Cir.2001) (quoting Rosebud Sioux Tribe v. Val-U Constr. Co., 50 F.3d *99 560, 562 (8th Cir.), cert,, denied, 516 U.S. 819, 116 S.Ct. 78, 133 L.Ed.2d 37 (1995)).
Courts protect governmental immunity to suit by strictly construing any alleged waiver. See, e.g., College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (citing cases). Courts also protect sovereign immunity by hearing interlocutory appeals of trial court decisions that deny motions to dismiss or deny partial summary judgment motions based on immunity. See, e.g., Kimel v. Florida Board of Regents, 528 U.S. 62, 66, 70-71, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); Jensen v. City of Oxnard, 145 F.3d 1078 (9th Cir.1998) (hearing interlocutory appeal of denial of FRCP 12(b)(6) motion to dismiss on qualified immunity); Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1183 n. 2 (9th Cir.1997) (“A district court’s order denying a motion to dismiss on a claim of Eleventh Amendment immunity is an immediately appealable ‘collateral order’ ”).
Sovereign immunity is a jurisdictional question, because courts do not have authority to hear a case against a government unless it has expressly consented to that exact suit. Meyer, 510 U.S. at 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (citing cases). Thus, courts must voluntarily raise the issue of immunity when hearing cases against governments. See, e.g., College Sav. Bank, 527 U.S. at 678, 119 S.Ct. 2219, 144 L.Ed.2d 605 (“the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court”); Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank, 527 U.S. 627, 633, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); Missouri River Services, 267 F.3d at 852 (“[bjecause a waiver of immunity from suit implicates jurisdictional concerns, a court must satisfy itself that jurisdiction exists”); Jones v. United, Stales, 255 F.3d 507, 511 (8th Cir.2001) (“because sovereign immunity implicates our subject matter jurisdiction, the issue may not be waived, and the government may raise it at any stage”) (citing cases).
With these principles in mind, I now turn to my views on applying the collateral order doctrine to the present appeal.
A. Sovereign immunity questions are effectively un re viewable upon appeal from final judgmen ts.
In 1949, the Supreme Court adopted the collateral order doctrine in Cohen. The Court utilizes a three part test to determine which interlocutory appeals qualify as collateral orders that deserve immediate appeal before a final judgment:
1. The order must conclusively determine the disputed question;
2. The order must resolve an important issue completely separate from the merits of the case; and
3. The order must be effectively unre-viewable on appeal from a final judgment.
Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); Cohen.
The majority holds that the present appeal fails the third step because we can effectively review this case after a full trial and final judgment. I disagree.
The rights that defendant claims are protected by sovereign immunity in this case are the right not to litigate any claims under the gaming compact from individuals in plaintiffs situation, and the right not to defend a claim for more than $100,000 in non-economic damages under the TTOC.
The majority views this as being an issue of “liability” and relies on a Ninth *100 Circuit case, Burns-Vidlak v. Chandler, 165 F.3d 1257, 1261 & n. 7 (9th Cir.1999), to hold that defendant must defend this suit to final judgment and only then appeal the trial court’s order that this case is proceeding under the gaming compact and that plaintiff can seek up to $800,000 in non-economic damages.[2]
In contrast, the case law, including in the Ninth Circuit, holds that sovereign immunity is the right to be tree of litigating an issue that is subject to immunity, that it is not just a right to be free of liability after litigation, and that this right is lost if the government is required to defend first because the issue cannot be “effectively reviewed” after trial. “The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.” Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 143-44, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis in original)); see also Metcalf & Eddy, 506 U.S. at 145-46, 113 S.Ct. 684, 121 L.Ed.2d 605 (rejecting the argument that 11th Amendment immunity “does not confer immunity from suit, but is merely a defense to liability”); Midland Asphalt Corp. v. United States, 489 U.S. 794, 800-01, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) (“deprivation of the right not to be tried satisfies the ... requirement of being effectively unreviewable on appeal from a final judgment”) (internal quotation marks omitted); Thomas v. Nakatani, 309 F.3d 1203, 1207-08 (9th Cir.2002) (“as the Supreme Court said in Metcalf & Eddy, the reason we will hear a state’s appeal from a decision denying immunity to it under the Eleventh Amendment is that the benefit of the immunity is lost or severely eroded once the suit is allowed to proceed past the motion stage of the litigation”); In re Sealed Case No. 99-3091, 192 F.3d 995, 999 (D.C.Cir.1999) (“federal sovereign immunity is an immunity from suit, not simply a defense to liability on the merits .... the right to be free from the burdens of trial is effectively unreviewable on appeal from a final judgment”); Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1183 n. 2 (9th Cir.1997) (“the central benefit of immunity, the right not to stand trial in the first instance, is effectively lost if a case is erroneously permitted to proceed to trial”) (citing three Supreme Court cases including Cohen).
I agree with these cases. Once we permit defendant to be forced to litigate this case under the gaming compact and in excess of the waiver of sovereign immunity in the TTOC, we cannot effectively review the issues on a later appeal. At that point, we will be unable to grant defendant any real or effective relief from the violation of its immunity right not to have to litigate these issues.
B. It is irrelevant that plaintiff's suit would continue after our ruling.
The majority also bases its decision not to review this interlocutory appeal on the fact that the case, because of the Tribe’s limited waiver of sovereign immunity in the TTOC, will continue to trial no matter how we would rule on this appeal. While it is true that the case will continue to be *101 litigated, it is irrelevant in ray opinion to our analysis and I disagree with the majority’s rebanee on this fact.
It appears beyond question that the majority of interlocutory appeals that are heard under the collateral order doctrine continue to be litigated even after the appellate courts render their decisions. In fact, one of the elements of the Cohen test requires that the issue raised by the interlocutory appeal be “completely separate from the merits of the action.” Nixon v. Fitzgerald, 457 U.S. 731, 742, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). Hence, by definition, appellate court decisions in collateral order appeals cannot terminate the litigation on the merits and those suits should continue even after the appellate court decision. The appellate court judgment only finally determines the collateral order appeal, which is required to be about an issue “completely separate from the merits of the action.” In Cohen itself, the very case that created the collateral order doctrine, the litigation probably continued after the Supreme Court accepted the interlocutory appeal and rendered its decision. The Court in Cohen only required the district court to apply the Erie doctrine in answering the procedural question of whether a New Jersey state law or FRCP 23 applied to whether the plaintiff had to procure a bond to be allowed to file a shareholder’s derivative suit.[3] Cohen, 337 U.S. at 556-57, 69 S.Ct. 1221, 93 L.Ed. 1528.
There are several examples of interlocutory appeals that raised immunity defenses in which the suit would continue to be litigated after the appellate court decision, although sometimes some defendants were totally dismissed from the case. See Thomas, 309 F.3d at 1205-08 (Ninth Circuit heard interlocutory appeal of district court order denying state and individual defendants’ motions to dismiss on immunity even though the case would continue in any event against the individual defendant under plaintiffs state law claims); Reyes v. Sazan, 168 F.3d 158, 159-63 & 162 n. 2 (5th Cir.1999) (Eleventh Amendment immunity did not bar the state law claims against the officers and the section 1983 claims would also continue against the officers); Romano v. Bible, 169 F.3d 1182, 1185-86 (9th Cir.1999) (state’s Eleventh Amendment immunity to suit did not shield state officials when sued in their personal capacity); Beardsley v. Webb, 30 F.3d 524 (4th Cir.1994) (“[s]everal courts have held that despite state indemnification the Eleventh Amendment does not bar actions against officers sued in their individual capacity”) (citing cases).
II.
In my view, we are violating the principles of sovereign immunity by requiring defendant to litigate issues that are protected by immunity. The tribal legislature has not waived immunity to suits by individuals such as plaintiff under the gaming compact and it has not waived immunity to claims for non-economic damages for more than $100,000 under the TTOC.
In a few years, this case will probably return to us, after enormous amounts of work and resources have been expended by plaintiff, defendant, and the trial court. We will then have to decide whether sovereign immunity should have prevented the gaming compact and the $800,000 non-cco-nomic damage issue from having been litigated. That will be a lamentable waste of resources and time if I am correct that sovereign immunity tells us these claims should not have been litigated at all. In *102 that case, defendant’s right not to be required to face these issues will have been irrevocably violated.
In my opinion, the issue raised by this appeal, and the issue of sovereign immunity in general, fall within that “small class of interlocutory orders” that meet the definition of the collateral order doctrine and that are “immediately appealable.”
I respectfully dissent.

. I do not understand what the Ninth Circuit meant in Burns-Vidlak v. Chandler, 165 F.3d 1257, 1261 n. 7 (9th Cir.1999), when it said that the immunity right at issue there was "a defense to liability rather than a right to be free from trial.” Does that mean governments are forced to litigate issues to final judgments and only then it is to be determined whether they are free from liability? That procedure would be a colossal waste of judicial and governmental resources.

. The Cohen case should have proceeded after the Court’s collateral order decision if the plaintiff complied with the decision and posted a bond.