**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DIANE M. HENDRICKS; KENNETH A.
HENDRICKS,
              *Plaintiffs-Appellees,*

          v.

BANK OF AMERICA, N.A.,
                        *Defendant,*

          and

MUTUAL INDEMNITY (BERMUDA),
LTD., a Bermuda corporation,
                *Defendant-Appellant.*

No. 03-55754

D.C. No.
CV-02-03150-GHK

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted
January 14, 2004—San Francisco, California

Filed February 25, 2005
Amended May 24, 2005

Before: J. Clifford Wallace, John T. Noonan, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Wallace

5615

**COUNSEL**

Vincent J. Connelly, Mayer, Brown, Rowe & Mawe, Chicago, Illinois, for the defendant-appellant.

Bruce R. Meckler, Meckler Bulger & Tilson, Chicago, Illinois, and Robert G. Campbell, Cox Castle & Nicholson LLP, Los Angeles, California, for the plaintiffs-appellees.

**ORDER**

The court's opinion filed February 25, 2005, slip op. 2209, and appearing at 398 F.3d 1165 (9th Cir. 2005), is hereby amended as follows:

1. On page 2223, line 8, delete all text from "We review the district court's decision not to enforce" through the end of the paragraph, including the citation to *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 294 F.3d 1171, 1174 (9th Cir. 2002). Replace that text with "We review de novo both the district court's application of collateral estoppel, *see Littlejohn v. United States*, 321 F.3d 915, 919 (9th Cir. 2003), and its interpretation of the forum selection clause. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1036 n.3 (9th Cir. 1995)."

2. On page 2226, second full paragraph, line 4, delete "the district court did not abuse its discretion" and replace with "the district court did not err". In the same paragraph, line 8, delete "did not abuse its discretion" and replace with "did not err".

3. On Page 2231, line 19, delete the entire sentence begin-ning with "In its findings of fact." Replace that sentence with the following:

> In its findings of fact, the Commonwealth Court of Pennsylvania found that if a particular agree-ment was not enforced, Mutual might face "an uncertain prospect of whether [it could] honor [its] contractual obligations to pay dividends" and, if such payments could not be made, it "may face involuntary insolvency proceedings." Although the Pennsylvania court enforced that agreement, the district court could reasonably conclude that Mutual remained in a precarious financial position even after enforcement of the agreement.

With these amendments, the panel has voted to deny the petition for panel rehearing. Judge McKeown has voted to deny the petition for rehearing en banc, and Judge Wallace and Judge Noonan so recommended. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED. No subsequent petitions for rehearing or rehearing en banc may be filed.

---

## OPINION

WALLACE, Senior Circuit Judge:

Mutual Indemnity (Bermuda), Ltd., the defendant in the trial court (Mutual), appeals from a district court order enjoin-ing co-defendant Bank of America, N.A. (Bank) from honor-ing Mutual's efforts to draw down on a letter of credit (LOC)

posted by Diane and Kenneth Hendricks, the trial court plaintiffs (the Hendricks). We have jurisdiction to review the district court's preliminary injunction order pursuant to 28 U.S.C. § 1292(a)(1), and we affirm.

## I.

The Hendricks own American Patriot Insurance Agency, Inc. (American Patriot), a company that specializes in providing insurance products to roofing contractors. In early 1997, the Hendricks established a commercial insurance program for workers compensation and other insurance coverages with underwriting assistance from Mutual Risk Management and its subsidiaries: Mutual, Legion Insurance Company, Commonwealth Risk Services, L.P., and Villanova Insurance Company (collectively, the Mutual Entities). Several contracts govern the relationship between American Patriot and the Mutual Entities, but only one is directly relevant here: a "shareholder agreement," which entitles the Hendricks to reap certain profits and income generated by the commercial insurance program and commits the Hendricks to indemnify Mutual for losses on the program. The shareholder agreement also requires the Hendricks to post irrevocable LOCs and maintain the LOCs for the duration of Mutual's outstanding or potential liability for program losses.

In April 2001, the Hendricks filed an action in the Northern District of Illinois "alleging fraud, misrepresentation, conspiracy, breach of contract, RICO violations and negligence arising out of" the Mutual Entities' alleged fraudulent mishandling of their underwriting and claims-handling practices from 1997 to 1999. *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 248 F. Supp. 2d 779, 781 (N.D. Ill. 2003). The Mutual Entities moved to dismiss for lack of venue, citing the shareholder agreement's forum selection clause, which states: "This Agreement . . . shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved

exclusively by the courts of Bermuda." The district court agreed that the forum selection clause precluded the Hendricks' Illinois action and granted the motion to dismiss. *Id.* at 783-86. On appeal, the Seventh Circuit affirmed. *See Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884 (7th Cir. 2004).

One day after filing their Illinois complaint, the Hendricks brought an action in the Central District of California seeking injunctive relief to prevent Mutual from drawing down on an LOC in the possession of the Bank. The California complaint listed both Mutual and the Bank as defendants and requested a preliminary injunction based on California Commercial Code section 5109(b), which provides that "[i]f an applicant claims that . . . honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant, a court of competent jurisdiction may temporarily or permanently enjoin the issuer from honoring a presentation." CAL. COM. CODE § 5109(b).

The district court reviewed the Hendricks' pleadings and promptly issued a temporary restraining order against Mutual, directing it to show cause why a preliminary injunction should not be entered. After the Northern District of Illinois filed its decision in the Illinois action, Mutual invoked collateral estoppel and asked the district court to dissolve the temporary restraining order and deny the Hendricks' request for injunctive relief. Following oral argument, the district court determined that the Hendricks "ha[d] stated a claim for interim relief against the Bank of America as the issuer of the LOC . . . pursuant to . . . Section 5109." The district court reasoned that collateral estoppel did not prevent the Hendricks from seeking injunctive relief against the Bank, because the Bank was not a party in the Illinois action against the Mutual Entities. In addition, it concluded that Mutual was "not a necessary, much less an indispensable, party to" that action against the Bank. It therefore "stayed" the Hendricks' claims against Mutual and issued a "preliminary" injunction to

remain in effect "until the earlier of the following: (1) [f]inal resolution of the merits of the underlying claims between Plaintiffs and the Mutual Defendants in either the Illinois federal court or Bermuda; or (2) April 14, 2006."

## II.

Mutual does not challenge the district court's decision to stay indefinitely the Hendricks' action against it individually. Instead, it seeks to appeal from the portion of the district court's order that grants preliminary injunctive relief against the co-defendant Bank. The Bank has chosen not to participate in Mutual's appeal since it does not assert an independent interest in the LOC. This raises an important threshold question for our consideration: whether Mutual, a party to the Hendricks' action and the LOC beneficiary, has standing to appeal from the district court's preliminary injunction order against the Bank.

**[1]** We have held that a defendant may assert "standing to contest the grant of the preliminary injunction issued against . . . other defendants" under certain circumstances, "even though those defendants have not appealed." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 468 n.2 (9th Cir. 1984). To meet our standing requirements for appeal, a defendant must demonstrate that he or she was "a party at the time judgment was entered and [was] aggrieved by the decision being appealed." *Id.*; *see also In re Exxon Valdez*, 239 F.3d 985, 987 (9th Cir. 2001) (concluding that a litigant had standing to appeal because it was "a party to this case from the beginning" and "contends that it is aggrieved by the district court's order"). Mutual clearly satisfies these requirements because it was both a party of record when the district court entered its preliminary injunction and the intended beneficiary of the enjoined LOC. *See Lueker v. First Nat'l Bank of Boston (Guernsey) Ltd.*, 82 F.3d 334, 337 (10th Cir. 1996) (observing that an LOC beneficiary had standing to appeal from an injunction entered against a co-defendant bank under similar

circumstances); *Andy Marine, Inc. v. Zidell, Inc.*, 812 F.2d 534 (9th Cir. 1987) (exercising jurisdiction over an LOC beneficiary's appeal from a district court order, which enjoined a bank from honoring the beneficiary's draft).

The Hendricks also contend that Mutual lacks standing to appeal because it steadfastly contested personal jurisdiction in the Central District of California, but they cite no authority which supports this argument. Were we to treat personal jurisdiction defenses under Federal Rule of Civil Procedure 12(b)(2) as waivers of appellate standing, we would essentially immunize district courts' personal jurisdiction determinations from appellate scrutiny—an untenable proposition, to be sure.

We recognize, of course, that a *nonparty* generally cannot simultaneously challenge personal jurisdiction and assert standing to appeal. "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam). For this reason, an interested LOC beneficiary who "deliberately [chooses] to remain a nonparty" lacks standing to appeal from a district court order which permanently enjoined a bank from making payment on the LOC. *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1439-41 (9th Cir. 1987).

**[2]** However, Mutual *was* a party to the district court proceedings and was aggrieved by the preliminary injunction. It therefore has standing to appeal the injunction. *See Goldie's Bookstore, Inc.*, 739 F.2d at 468 n.2. We hold, therefore, that Mutual has standing to appeal from the district court's preliminary injunction.

## III.

Mutual raises essentially two procedural challenges to the district court's preliminary injunction: improper venue and

lack of personal jurisdiction over a necessary and indispensable party. *See* FED. R. CIV. P. 12(b)(3) (improper venue); FED. R. CIV. P. 19(a)-(b) (necessary and indispensable party).

## A.

**[3]** Before advancing to the merits of Mutual's procedural challenges, we must decide whether these issues are amenable to appellate review at this stage. Under 28 U.S.C. § 1292(a)(1), we may exercise interlocutory appellate jurisdiction over the district court's preliminary injunction and pendent jurisdiction over any "otherwise non-appealable ruling [that] is 'inextricably intertwined' with or 'necessary to ensure meaningful review of' the order properly before us on interlocutory appeal." *Meredith v. Oregon*, 321 F.3d 807, 813 (9th Cir. 2003) (*quoting Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995)), *amended by* 326 F.3d 1030 (9th Cir. 2003). District court rulings are "inextricably intertwined" with a preliminary injunction when "the legal theories on which the issues advance [are] . . . so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or . . . resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Meredith*, 321 F.3d at 814, *quoting Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000). We also construe *Swint*'s "necessary to ensure meaningful review" language narrowly to "require[ ] much more than a tangential relationship to the decision properly before us on interlocutory appeal." *Poulos v. Caesar's World, Inc.*, 379 F.3d 654, 669 (9th Cir. 2004).

**[4]** The Hendricks contend that Mutual's personal jurisdiction and venue defenses are not "inextricably intertwined" with the district court's preliminary injunction. We need not decide here whether their assertion is correct, because we conclude that "review of [these two defenses] is necessary to ensure meaningful review of" the district court's preliminary injunction. *Swint*, 514 U.S. at 51.

In reaching this conclusion, we consider whether the issue calls into question the district court's "*authority to rule* on a party's motion for a preliminary injunction." *Meredith*, 321 F.3d at 816 (emphasis added). For example, we have recognized that it "is necessary" to decide subject matter jurisdiction defenses "to ensure meaningful review of [a] district court's interlocutory rulings because if appellate courts lack jurisdiction, they cannot review the merits of these properly appealed rulings." *Id.* (internal quotation marks omitted); *see also Wong v. United States*, 373 F.3d 952, 960-61 (9th Cir. 2004) (discussing pendent jurisdiction over subject matter jurisdiction issues). Similarly, we have invoked pendent jurisdiction under section 1292(a)(1) to decide whether a district court lacked "authority to rule on a party's motion for a preliminary injunction" because it was "required to abstain." *Meredith*, 321 F.3d at 816. On the other hand, we have declined to exercise pendent jurisdiction over rulings such as the availability of a *Bivens* remedy that were "not a logical predicate to the" issues properly raised on appeal and did not "implicate the very power of the district court to issue the rulings on appeal." *Wong*, 373 F.3d at 961. The common thread running throughout these decisions is our recognition that section 1292(a)(1) furnishes pendent jurisdiction over those questions that implicate "the very power the district court used to issue the rulings then under consideration." *Meredith*, 321 F.3d at 816 (internal brackets omitted), *quoting Merritt v. Shuttle, Inc.*, 187 F.3d 263, 269 (2d Cir. 1999).

From these principles, it follows that we may exercise pendent jurisdiction to review Mutual's personal jurisdiction and venue defenses under the particular circumstances of this interlocutory appeal. Like the various rulings discussed in *Meredith*, Mutual's procedural defenses bear on the district court's power to issue the injunction, because the court would lack authority to grant relief if (1) Mutual was a necessary and indispensable party and immune from personal jurisdiction in this forum, or (2) venue was improper because the forum-selection clause precluded preliminary injunctive relief out-

side Bermuda. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." (internal quotation marks and ellipsis omitted)).

**[5]** We recognize, of course, that we need not consider Rule 12 and Rule 19 defenses in every case "to ensure meaningful review of" preliminary injunctions on interlocutory appeal. Had Mutual waived the privilege to assert these defenses, for instance, by failing to raise them "by motion" or "in a responsive pleading," we would lack pendent jurisdiction to review them on interlocutory appeal. FED. R. CIV. P. 12(h); *see also Poulos*, 379 F.3d at 672 (declining to review a district court's exercise of personal jurisdiction because "the district court would have retained jurisdiction . . . regardless of whether it asserted personal jurisdiction over [a subgroup of] defendants"). In this case, however, Mutual did not waive its venue and personal jurisdiction defenses because it raised them in a timely manner in its first responsive pleading after securing several reasonable extensions of the filing deadline to facilitate settlement negotiations. *See* Fed. R. Civ. P. 12(h). Because Mutual's procedural defenses were properly raised, and because they attacked the district court's authority to grant relief, the district court had to consider the defenses as "a logical predicate to" its preliminary injunction order. *Wong*, 373 F.3d at 961. We therefore exercise pendent jurisdiction over Mutual's two procedural defenses pursuant to section 1292(a)(1). *Cf. In re Diet Drugs*, 282 F.3d 220, 230 n.5 (3d Cir. 2002) ("We have pendent appellate jurisdiction over the issue of personal jurisdiction, because, in this case, that issue bears upon the propriety of the preliminary injunction." (internal quotation marks and brackets omitted)).

### B.

**[6]** Mutual contends that the district court should have dismissed the instant action pursuant to Federal Rule of Civil

Procedure 19(b) because Mutual was not subject to personal jurisdiction in the Central District of California. Rule 19 provides that a court must dismiss a civil action if it lacks personal jurisdiction over any "necessary" and "indispensable" party. FED. R. CIV. P. 19(a)-(b); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985) (reviewing this analysis). A party is "necessary" if "(1) in [its] absence complete relief cannot be afforded among those already parties, or (2) [it] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (i) as a practical matter impair or impede [its] ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring . . . inconsistent obligations." FED. R. CIV. P. 19(a). Whether a party is "indispensable" is an equitable determination to be decided based on a variety of factors, including:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(b). If Mutual is not a "necessary" and "indispensable" party to the Hendricks' request for injunctive relief against the Bank, its argument for dismissal based on personal jurisdiction fails.

Rule 19's necessary and indispensable party "inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002). As such, we review the district court's resolution

of this inquiry for an abuse of discretion. *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996).

**[7]** The district court delivered "complete relief" to the Hendricks without Mutual's direct participation in the suit by enjoining the Bank from honoring a draw on the LOC pending the outcome of litigation between the Hendricks and Mutual in another forum. FED. R. CIV. P. 19(a)(1). Moreover, the preliminary injunction does not "as a practical matter impair or impede [Mutual's] ability to protect [its] interest" in the LOC or "leave any of the persons already parties subject to a risk of incurring . . . inconsistent obligations" in another forum. *See* FED. R. CIV. P. 19(a)(2). Instead, it merely preserves the asset pending a final judgment on the merits in Bermuda. Thus, "as a practical matter," the preliminary injunction does not "impede [Mutual's] ability to protect that" asset.[1]

**[8]** Having rejected Mutual's challenge to the district court's "necessary" party analysis, we need not decide whether "in equity and good conscience" Mutual qualifies as an indispensable party under Rule 19(b). *See United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1381 n.18a (9th Cir. 1984). Since Mutual has not demonstrated that the district court lacked personal jurisdiction over a "necessary" party to the Hendricks' action, the district court could grant injunctive relief against the Bank without deciding whether it had personal jurisdiction over Mutual individually.

### C.

Mutual argues next that the shareholder agreement's forum selection clause required the district court to dismiss the Hen-

---

[1]There was no abuse of discretion in the district court's conclusion that Mutual is not a "necessary" party to the Hendricks' action for injunctive relief against the Bank.

dricks' action for improper venue. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (holding that a motion to dismiss based on a forum-selection clause should be treated "as a Rule 12(b)(3) motion to dismiss for improper venue."). There is some ambiguity in the record as to whether the district court actually reached Mutual's improper venue argument prior to issuing its preliminary injunction. After oral argument, the court stated initially that it would "not at this point decide . . . whether the forum selection clause is in fact applicable [in] this case." Later on, however, the court returned to the venue question and reasoned that "to the extent that [Mutual] may be making any argument with respect to the forum selection clause or collateral estoppel, neither of those arguments prevent us from issuing an injunction under [section] 5109 against [the Bank] because we are making different determinations of issues against a different party." That is, the district court held that the forum selection clause did not preclude venue, insofar as it interpreted the clause not to apply to the Hendricks' section 5109 claim against the Bank, which is a nonparty to the Shareholder Agreement. We need not decide whether this interpretation was correct, because, as explained later, we hold that the clause does not apply for different reasons. We review de novo both the district court's application of collateral estoppel, *see Littlejohn v. United States*, 321 F.3d 915, 919 (9th Cir. 2003), and its interpretation of the forum selection clause. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1036 n.3 (9th Cir. 1995).

According to Mutual, the Seventh Circuit's decision in *American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004), compels the conclusion that venue was improper. That court held that the shareholder agreement's forum selection clause bars courts outside Bermuda from adjudicating the Hendricks' substantive claims for fraud, breach of contract, and other claims. 364 F.3d at 888-90. This determination is dispositive here, Mutual maintains, because "[c]ollateral estoppel, or issue preclusion,

bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850 (9th Cir. 1997).

By definition, collateral estoppel does not foreclose our independent consideration of a district court's venue determination unless "the issue at stake" in the instant litigation is "identical to" an issue "alleged" and "actually litigated in the prior litigation." *Id.* The venue issues under consideration here do not meet this test. In the Illinois action, the Hendricks sought a final judgment on the merits of their dispute with the Mutual Entities, so the Seventh Circuit had no occasion to consider the precise venue question posed in this case: whether the shareholder agreement's forum selection clause prevents courts outside Bermuda from issuing temporary injunctions to secure assets pending a final judgment on the merits in Bermuda. Collateral estoppel might preclude the Hendricks from bringing a common law fraud or misrepresentation action in the Central District of California. However, that is different from the Hendricks seeking temporary injunctive relief in this forum to preserve an asset, which was not an issue "actually adjudicated in the" Illinois case. *Id.*

Turning to the merits of Mutual's improper venue defense, we presume that the shareholder agreement's forum selection clause is prima facie valid and enforceable unless the Hendricks can show that enforcement would be " 'unreasonable' under the circumstances." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *see also Arguenta*, 87 F.3d at 325 ("Although *Bremen* is an admiralty case, its standard has been widely applied to forum selection clauses in general."). To the extent the forum selection clause applies here, the Hendricks have the burden " 'to show that trial in the contractual forum would be so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court.' " *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 515 (9th Cir. 1988), *quoting Bremen*, 407 U.S. at 18.

**[9]** The question presented here is significantly different, however, from the typical forum selection clause case. The Hendricks do not dispute the forum selection clause's validity, nor do they contest the Seventh Circuit's determination that the clause is enforceable where applicable; instead, they contend that the clause's *scope* does not extend to actions designed to preserve assets pending a judgment on the merits in the contractually selected forum. Whether the Hendricks must secure a preliminary injunction in Bermuda to preserve this asset or may claim protection under the California statute is a question of first impression in our circuit. However, our reasoning in an analogous admiralty case, *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627 (9th Cir. 1982), is instructive:

> It is clear from The Bremen and its Ninth Circuit progeny that where there is an enforceable foreign court selection clause, dismissal of the action is generally appropriate. However neither the Supreme Court in The Bremen, nor this court, has addressed the issue of whether . . . the district court, instead of unconstitutionally dismissing the action, may ensure the availability of security pending a determination of the merits in the contractually selected forum. . . .
>
> The enforceability of foreign court selection clauses is a matter of judicially-created contract law. The question, then, is, what does the contract permit or require? Does it permit attachment in another forum, and maintenance of the attachment pending decision in the contractually selected forum? . . .
>
> It is clear . . . that the parties intended that they would litigate the merits of any dispute . . . in [another] forum. There is, however, no indication . . . that the parties intended to limit proceedings to obtain prejudgment security to that forum. . . .

We hold that in an admiralty action, absent express intent to the contrary, a forum selection clause providing that all disputes under the charter will be determined by a selected foreign court neither precludes a plaintiff from commencing an action in the district court to obtain security by maritime attachment, nor prohibits the district court from ensuring the availability of security adequate to satisfy a favorable judgment by the selected forum.

*Id.* at 631-33 (internal citations omitted).

**[10]** Although we cautiously confined *Polar Shipping*'s holding to admiralty actions, there is no compelling reason why the analysis developed in that case should not apply to temporary injunctions issued under section 5109(b). In both *Polar Shipping* and the instant case, "[t]he enforceability of foreign court selection clauses is a matter of judicially-created contract law," meaning that "the intent of the parties governs the extent to which [the district court] may exercise its jurisdiction" to preserve assets pending a judgment in the contractually designated forum. *Polar Shipping*, 680 F.2d at 632; *see also Bremen*, 407 U.S. at 12 (rejecting the argument that forum selection clauses "oust" a district court of jurisdiction, and describing the proper inquiry as "whether [the] court should have exercised its jurisdiction to do more than give effect to the legitimate expectation of the parties").

In this case, the forum selection clause manifests the parties' consensus to litigate the *merits* of "any dispute concerning [the Shareholder] Agreement" in Bermuda. But the case before us is not about the agreement itself or its validity. On the contrary, there is "no indication from either the [agreement] or the record, that [the parties] intended to limit proceedings to obtain prejudgment security to that forum. If the parties had so intended they could easily have worded [the forum selection clause] to so provide. They did not do so." *Polar Shipping*, 680 F.2d at 632; *see also Gregorio T. v. Wil-*

*son*, 59 F.3d 1002, 1004 (9th Cir. 1995) (observing that in granting a preliminary injunction "we do not review the underlying merits of the case").

**[11]** Since Mutual has not shown from the language of the shareholders agreement or presented any evidence that the parties intended to limit actions outside Bermuda for prejudgment injunctive relief, the district court did not err by concluding that the Central District of California was an appropriate venue for the Hendricks' action under section 5109(b) to preserve the LOC. We hold that the district court did not err in denying Mutual's motion to dismiss the Hendricks' action for improper venue.

## IV.

Mutual did not address the merits of the injunction in its pleadings filed in district court because of counsel's fear that challenging the fraud allegations would have submitted Mutual to its jurisdiction. At the oral argument, Mutual did make passing reference to the merits. Although Mutual arguably waived its challenge to the merits, as the question is a close one, we address the merits of Mutual's appeal on this point.

With these procedural hurdles behind us, we turn at last to the merits of the district court's preliminary injunction. "Our review is limited and deferential." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc). We must affirm the injunction "unless the district court (1) abused its discretion or (2) based its discretion on an erroneous legal standard or on clearly erroneous findings of fact." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003).

## A.

Mutual argues that the district court's preliminary injunction was inappropriate because the Hendricks' action does not

anticipate a final judgment on the merits in the Central District of California. Pursuant to Federal Rule of Civil Procedure 64, "all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held." Thus, we look to California law to determine whether the district court could grant a preliminary injunction even though final resolution of the underlying fraud claim would not occur in that court.

**[12]** California law expressly allows "a court of competent jurisdiction [to] temporarily . . . enjoin" a bank from honoring a letter of credit "or grant similar relief" if the plaintiff claims that honor would "facilitate a material fraud" by the beneficiary on the plaintiff and certain requirements are satisfied. CAL. COM. CODE § 5109(b). The statute contains no requirement that final resolution of the merits must occur in the same court that grants the "temporar[y]" or "similar" relief. Although the district court used the word "preliminary" in describing the injunction, section 5109(b) permits "temporar-[y]" injunctions and also allows a court to "grant similar relief." The district court could just as well have entered a "temporary" injunction rather than a "preliminary" injunction. We conclude that the power to do so is not determined by which of the two designations the district court uses. In the case before us, it is obviously a form of relief expressly authorized by the state statute. The district court had authority to grant the interim relief pursuant to section 5109.

B.

The final issue presented for our review is the district court's application of the discrete legal standards for injunctive relief. The district court granted the Hendricks' complaint for injunctive relief because it found "there [was a] sufficient showing of likelihood of success on the merits of [their] claim of material fraud" and that there was "certainly a possibility

of irreparable injury inasmuch as once released, the money is likely . . . to be dissipated in light of [Mutual's] questionable financial circumstances." We review this determination for an abuse of discretion. *Gorbach v. Reno*, 219 F.3d 1087, 1091 (9th Cir. 2000) (en banc).

1.

**[13]** Because the district court issued its order pursuant to section 5109, we evaluate Mutual's likelihood of success according to section 5109's standard:

> If an applicant claims that a required document is forged or materially fraudulent or that honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant, a court of competent jurisdiction may temporarily . . . enjoin the issuer from honoring a presentation or grant similar relief against the issuer or other persons only if the court finds that: . . . on the basis of the information submitted to the court, the applicant is *more likely than not to succeed* under its claim of . . . material fraud . . . .

CAL. COM. CODE § 5109(b) (emphasis supplied). Put differently, this provision authorizes the district court to grant injunctive relief only if the record shows that allowing Mutual to draw down on the LOC "more likely than not" would facilitate a material fraud by Mutual.

The district court concluded that the Hendricks established a sufficient probability of success on the merits, because they established a prima facie case of fraud, which Mutual did not challenge in its opposition to the court's order to show cause. The court cited the uncontroverted affidavit of Eric Bossard, a former Legion Insurance Company executive, which revealed that the Mutual Entities systematically under-reserved claims and misrepresented the extent of the Hen-

dricks' liability for program losses. Whether the Hendricks originally *posted* their LOC in reliance on these fraudulent representations does not render the fraud immaterial, as Mutual alleges, because the Hendricks submitted affidavit testimony that they *maintained* the LOC with the Bank—and thereby exposed themselves to even greater losses—in reliance on the Mutual Entities' representations. As the district court recognized, allowing Mutual to draw on the LOC could "facilitate a material fraud" by aggravating the Hendricks' loss if Mutual turns out to be insolvent and, hence, judgment-proof. CAL. COM. CODE § 5109(b).

**[14]** Mutual contends that the Bossard affidavit only establishes misrepresentations by employees of Mutual Entities other than Mutual, the LOC beneficiary. This distinction between Mutual and the other Mutual Entities is irrelevant for present purposes, because the Bossard affidavit also states that the Mutual Entities were "acting as one in the marketing and implementation of" the Hendricks' insurance program; fraudulent statements by these employees were part of a coordinated fraud scheme in which Mutual played a key role. Mutual's intimate involvement in this scheme is evidenced by its President's signature on the letter agreement which formalized the parties' reinsurance arrangement, and its acceptance of payment for the "phantom" reinsurance. Given this unopposed evidence of Mutual's participation in the Mutual Entities' fraud scheme, the district court did not abuse its discretion by concluding the "likelihood of success" requirement was satisfied.

## 2.

**[15]** Section 5109(b) does not incorporate the common law irreparable injury requirement. However, some federal and state courts have applied this standard to suits for injunctive relief under U.C.C. section 5-109. *See, e.g.*, *Interco, Inc. v. First Nat'l Bank of Boston*, 560 F.2d 480 (1st Cir. 1977) (requiring a showing of "irreparable harm and inadequacy of

legal remedies" for injunctive relief under Massachusetts General Laws chapter 106, section 5-109 (quoting *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)); *In re Commco Tech., L.L.C.*, 258 B.R. 63, 64-65 (Bankr. D. Conn. 2001) (explaining that a plaintiff must make a showing of irreparable harm to qualify for a preliminary injunction under Minnesota Statute section 336.5-109 (2000)).

We need not decide whether there is an irreparable injury requirement for issuance of an injunction because the Hendricks contend that their risk of irreparable harm is "virtually self-evident," and their argument is persuasive. They assert that Mutual and the other Mutual Entities are "in serious financial straits" and would likely dissipate the LOC funds before the Hendricks could obtain a judgment on the merits in Bermuda. The district court agreed with this assessment of Mutual's financial circumstances.

The Hendricks submitted several documents from which the district court could reasonably conclude that Mutual's tenuous financial circumstances would imperil the Hendricks' ability to recoup assets drawn from the LOC. Two of these documents are particularly important: (1) an affidavit of William Taylor, a Pennsylvania state deputy insurance commissioner overseeing the rehabilitation of two of the Mutual Entities; and (2) an unpublished disposition dated November 25, 2002 from the Commonwealth Court of Pennsylvania relating to the rehabilitation proceedings. These records are to the effect that as recently as December 23, 2002—just four months before the district court entered its preliminary injunction—Mutual "conceded in its public statements and its filings that it [was] insolvent." Taylor's affidavit specifically describes a "letter . . . sent by David Ezekiel on behalf of [Mutual] 'to all Scheme Creditors,' " which "stated that 'the Company has suffered losses over the past 18-24 months which have resulted in the Company becoming insolvent.' " In its findings of fact, the Commonwealth Court of Pennsylvania found that if a particular agreement was not enforced,

Mutual might face "an uncertain prospect of whether [it could] honor [its] contractual obligations to pay dividends" and, if such payments could not be made, it "may face involuntary insolvency proceedings." Although the Pennsylvania court enforced that agreement, the district court could reasonably conclude that Mutual remained in a precarious financial position even after enforcement of the agreement. Mutual did not submit any evidence to demonstrate that its financial circumstances have improved since December 2002. We hold, therefore, that the district court did not abuse its discretion by concluding that the Hendricks would face a significant threat of irreparable injury if a preliminary injunction did not issue to prevent the Bank from honoring Mutual's draw. *See In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994) ("[A] district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant . . . .").

In a supplemental paper submitted after oral argument pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, Mutual contended that a recent unpublished decision of the Sixth Circuit arising out of related litigation "supports Mutual Indemnity's argument in this court that the district court's injunction should be reversed." That decision, *Hendricks v. Comerica Bank*, No. 03-1952, 2004 WL 2940879 (6th Cir. Dec. 20, 2004), reversed an injunction granted by the Eastern District of Michigan preventing a bank from honoring Mutual's draws against letters of credit obtained by the Hendricks, because the Hendricks had "failed as a matter of law to show irreparable harm." *Id.* at *1. The Sixth Circuit reasoned that "other courts have denied injunctions in cases in which it was unlikely that any foreign court could hear the underlying claim," and that "the chance that Mutual Indemnity is or will become bankrupt and will not be able to satisfy a judgment obtained against it presents less threat of irreparable harm than the chance that there will not even be a proceeding available in which to obtain that judgment." *Id.* at *5.

In other words, the Sixth Circuit held that a showing of a beneficiary's insolvency is insufficient as a matter of law to obtain an injunction preventing a bank from honoring the beneficiary's draw on an international letter of credit.

We need not and do not decide whether to adopt the Sixth Circuit's holding. Mutual did not argue in this court that evidence of its insolvency could not establish irreparable injury; rather, Mutual argued that "[i]njunctive relief is unwarranted when the plaintiff has . . . not demonstrated that the defendants cannot pay a judgment that might be entered on the plaintiff's underlying claims," and that "[t]here is *no* evidence . . . that [Mutual] is or [is] about to be insolvent." That is, instead of arguing that it was irrelevant whether or not Mutual was insolvent, Mutual contended that the Hendricks simply had made no such showing. Since Mutual did not argue that a showing of insolvency could not establish the requisite irreparable harm, we decline to consider that argument now. *See Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985) ("[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief."). In addition, we also do not consider whether the Sixth Circuit's decision is binding here as a mater of collateral estoppel, law of the case, or any other doctrine, because Mutual has made no such argument.

## V.

As Mutual has not shown that the district court "abused its discretion" or "based its discretion on an erroneous legal standard or on clearly erroneous findings of fact," *Satava*, 323 F.3d at 810, we affirm the district court's preliminary injunction.

AFFIRMED.